Frank A. Gulotta, J.
This is an action by a holder of a series of promissory notes against five defendants who appear in various capacities on the notes.
The defendant Lance Cleaners, Inc., the maker of the notes, has defaulted and judgment is granted against it for the full amount.
The action has been discontinued as against defendants Marvin Blau and Ethel Blau and is proceeding against Bernard Novick and Saul Ender who were payees and indorsers of the notes.
While relief asked for in the complaint is $8,333.20 it was conceded upon the trial that the maximum recovery can only be based on notes numbered 5 to 10 inclusive, in the principal amount of $2,499.96.
Only two defenses merit discussion — (1) whether Marvin Blau was in fact a prior indorser to Bernard Novick and Saul Ender, so that, when he was voluntarily released by the plaintiff, they in turn were discharged as a matter of law under section *367 201 of the Negotiable Instruments Law, (2) whether because of alleged false and fraudulent representations on the part of the Coburn Credit Company, an associate company of the plaintiff and the. holder of a chattel mortgage which secured the notes, the defendants herein were induced not to bid at a public auction under the chattel mortgage, and should therefore be given credit for the fair and reasonable value of the chattels rather than the sum actually bid at the auction.
It appears that, on or about May 20, 1958, the defendants Novick and Ender contracted to sell a dry cleaning business to Lance Cleaners, Inc., of which Marvin Blau was the president, for the sum of $15,000, $5,000 in cash and the balance of $10,000 by the purchaser executing a series of 24 promissory notes. Arrangements were made prior to the closing for the Coburn Credit Company to discount the $10,000 in notes for $8,000. The closing was held in the office of Island Factors Co. and the series of 24 notes, each in the sum of $416.66, were executed by Lance Cleaners, Inc., by Marvin Blau, president, to Novick and Ender. These notes were indorsed in blank and delivered to Coburn Credit Company who later transferred them to plaintiff in a bookkeeping transaction. Coburn Credit Company also required the indorsement of Mr. and Mrs. Blau as a condition for discounting the notes. However, Blau mistakenly started to indorse the notes before Novick and Ender, and had indorsed 16 of them before the error was noticed. His signature was then crossed out and he indorsed the notes again, but this time below Ender and Novick. This was done at the closing and prior to the delivery of the notes. On notes numbered 17 to 24 the Blau indorsements appear only once, and there they follow the signatures of Ender and Novick. This convinces me that it was never intended that the Blaus become indorsers for the benefit of Novick and Ender and I find that they did not.
To secure the payment of said notes a chattel mortgage on the chattels and fixtures in the store was given by Lance Cleaners, Inc., to Ender and Novick who in turn assigned it to Coburn Credit Company.
At the closing there was some discussion as to the continued liability of Novick and Ender as a result of which they signed the first 10 notes as unrestrietive indorsers, and the remaining 14 were executed by them ‘1 without recourse ’ ’.
Of the first 10 notes 4 were paid and this lawsuit involves the remaining 6.
As to the alleged fraudulent representations made to the defendants as a result of which they claim they refrained from *368 bidding at the public auction, I find as a fact that these defendants were apprised of the default in payment, that a discussion was had with them as to the possibility of their taking back the cleaning business, that they were notified of the time and place when the auction was to be held under the terms of the chattel mortgage, that the defendant Ender was in fact present at the auction and that no one prevented him from bidding and that the only reason he did not bid was because he was so instructed by his own attorney. There is no evidence in the record which would indicate that any fraud was practiced upon the defendants.
Upon the auction the property was bid in for $1,000. Assum- ' ing this to have been less than the true value of the chattels, mere inadequacy of bid price does not taint the auction with fraud, nor permit the court to set its own figure as to the fair and reasonable value of the chattels. Section 239-d of the Lien Law, which permits such a procedure in a limited class of cases, is confined to noncommercial chattel mortgages of $3,000 or less.
It is only where the sale is unfairly or irregularly conducted that a mortgagee is entitled to credit for full value, rather than the bid price. (Harrison v. Hall, 239 N. Y. 51.) See, also, Fleischmann v. Clausen (222 App. Div. 7) where failure to notify a second mortgagee was held not to cut him off. It was stated in Coe v. Cassidy (72 N. Y. 133, 138): “If he made a public sale after notice to the mortgagor, he could be made to account only for what the property brought at such sale. ’ ’
However gross inadequacy of price (selling $60,000 worth of security for $1,000), when coupled with failure to exhibit the merchandise, was held to keep the right of redemption alive in Casserly v. Witherbee (119 N. Y. 522).
Plaintiff contends that no credit should be given to the defendants because the whole $1,000 was expended for auctioneer’s fees, repair of the chattels and other expenditures. The chattel mortgage was not offered in evidence, nor was any other authority cited to justify such charges. Certainly the $750 which the plaintiff claims it expended to repair the chattels after the auction could not be a proper charge.
It is the conclusion of the court therefore that these defendants must receive a full credit of $1,000 against their liability on the notes.
Judgment is granted against the defendants Ender and Novick for the sum of $1,499.96, together with interest thereon from May 20,1958, and the Clerk is directed to enter judgment accordingly together with taxable costs.
*369 This decision contains the findings which this court deems essential as required by section 440 of the Civil Practice Act. All motions on which decision was reserved are disposed of in accordance with this opinion.