UNITED STATES of America

v.

ONE 1961 CADILLAC HARDTOP AUTO-
MOBILE, Serial No. 61J028918,
Grace Cunningham, Intervenor,
and
Rogers and Company, Inc.

Civ. A. No. 3860.

United States District Court
E. D. Tennessee, S. D.

Aug. 9, 1962.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for libelant.

Harold S. Duncan, Chattanooga, Tenn., for intervenor Grace Cunningham.

Cheek, Taylor & Groover, Knoxville, Tenn., for intervenor Rogers & Co., Inc.

FRANK W. WILSON, District Judge.

The United States has filed a libel for the forfeiture of a 1961 Cadillac automobile. In the libel it is charged that the automobile was used to transport heroin declared to be contraband as having been illegally imported into the United States. Use of the automobile for the transportation of the contraband heroin is alleged upon two occasions, one occasion being upon September 4, 1961 and the other occasion being use of the automobile for a trip from Chattanooga, Tennessee to Juarez, Mexico and return between the dates of September 20 through September 25, 1961. The libel alleges that Grace Cunningham is the registered owner of the vehicle and that Rogers and Company, Inc. held a lien thereon. An answer was filed by Grace Cunningham, who it appears undisputed in the record is now Grace Cunningham Graham, the wife of William Condon Graham, denying that the automobile was ever used to transport heroin and denying that it was ever used in violation of the laws relating to narcotics. An intervening petition has been filed by Rogers and Company, Inc. averring that it held a conditional sales contract upon the automobile with an unpaid balance of $1852.78 remaining due, averring further that it acted in good faith and without knowledge of any illegal use of the automobile and denying use of the automobile in violation of the laws relating to the transportation of narcotics. The intervening petition requests dismissal of the libel or, in the alternate, remission of the forfeiture to the extent of the lien.

The United States has filed a motion, to dismiss the intervening petition of Rogers and Company, Inc. upon the ground that the Court is without jurisdiction to permit intervention by a lienholder in a libel action for forfeiture under the narcotics laws and upon the further ground that the Court is without jurisdiction to grant a remission to a lienholder, even though it acted in good faith, in a libel for forfeiture under the narcotics laws.

Testimony with regard to the alleged use of this automobile in transporting narcotics was heard in a criminal action tried in this court in the cause entitled United States v. William R. Minnick, William Condon Graham, and Grace Cun-

ningham, Docket No. 11,719. This criminal trial resulted in the conviction of each of the defendants upon certain counts and the acquittal of the defendant, William Condon Graham, upon other counts in an eleven-count narcotics indictment.

The parties have stipulated to submit this libel to the Court upon the basis of the testimony in the record on the trial of the above criminal action, with the additional stipulation as to the interests of Rogers and Company, Inc. in the said automobile being as alleged in its intervening petition. Likewise the Court understands that no issue is raised herein by the Government but that Rogers and Company, Inc. did act in good faith in acquiring its lien, after proper investigation and without knowledge of any likely or proposed use of the automobile for illegal purposes.

The Court will consider first the issues raised in the answer of Grace Cunningham Graham, the owner of the automobile, and then direct its attention to the intervening petition of Rogers and Company, Inc. and the motion of the United States with respect thereto.

This action is prosecuted under Sections 781–788 of Title 49 (Transportation) U.S.C.A., relating to the seizure and forfeiture of carriers transporting contraband articles. Among other matters, Section 781 declares it unlawful to use any vehicle to transport or "facilitate" in transporting any contraband articles. Contraband articles are defined to include illegal narcotics. Section 782 provides for the forfeiture of any vehicle used in violation of Section 781, providing relief from such forfeitures to common carriers under specified circumstances, and to owners when the car was illegally in the possession of another at the time of the offense. Section 784, among other matters, provides:

"All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels and vehicles for violation of the customs laws * * * shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter * *."

In determining where the burden of proof lies in an action such as this, it is clear that Section 784 would incorporate and adopt the provisions of 19 U.S.C.A. relating to the burden of proof in forfeiture proceedings under the customs laws. U. S. v. One 1949 Pontiac Sedan, 7 Cir., 194 F.2d 756. Title 19 (Customs Duties) U.S.C.A., Sec. 1615, provides that:

"In all suits or actions brought for the forfeiture of any * * * vehicle * * * where the property is claimed by any person, the burden of proof shall lie upon such claimant; * * * Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court * * *."

U. S. v. Andreade, 9 Cir., 181 F.2d 42; W. E. Dean & Company v. U. S., 7 Cir., 171 F.2d 468.

Thus upon a showing by the United States that probable cause existed for the seizure of the automobile and institution of the libel action, the burden of proof for establishing that the automobile was not used in violation of 49 U.S.C.A. § 781 rests upon the claimants, Grace Cunningham Graham and Rogers and Company, Inc. Probable cause is established when the facts are of such a nature as to support a reasonable belief of a violation of the statute, and not necessarily such evidence as would constitute a prima facie case. 7 Cir., U. S. v. One 1949 Pontiac Sedan, 194 F.2d 756.

A brief summary of the testimony in the trial of the criminal case material to the issues in this libel action would be in order at this point. The principal witness for the Government was one Leland Green, a man with a lengthy record of criminal activities, who had been employed by the defendant, William Condon Graham, in the operation of the Casa Rio Supper Club, a combination supper club and gambling house. As described

by Graham, Green was employed as a "shill." Green testified that he arranged to go to Mexico with William R. Minnick in the latter part of August, 1961, to smuggle narcotics back to Chattanooga, all with the knowledge of Graham. Upon his return to Chattanooga with the Mexican heroin late at night upon September 3, 1961, he called Graham and reported that he had the drug, whereupon Graham advised that he would come by Green's home and pick up a sample. Graham did go to Green's home about 2:30 a. m., driving the white Cadillac that is the subject of this libel. After getting a sample of the drug, Graham drove away in the car. The next day Graham advised Green the "stuff" was good and he would take it all, whereupon Green delivered it to Graham at his home in Dayton. Green's wife also testified that Graham came to their home on the night in question in the white Cadillac and left in it after obtaining a sample of the drug. This was the substance of the Government's testimony with reference to the first alleged use of the automobile to transport contraband narcotics in violation of 49 U.S.C.A. § 781.

With regard to this occasion, Graham admitted knowledge of the proposed trip to Mexico by Green, but denied any knowledge that it was for the purpose of obtaining narcotics. Rather he testified that he understood the purpose of the trip was for Green to ride as "shotgun" with Minnick and to roll or rob Minnick of his money during the trip. Graham testified that the purpose of his visit to Green's house in the early morning of September 4 was in response to Green's telephone call to deliver some "bread" money to Green, who was at that time being paid $50.00 per week to stay away from the Casa Rio Club to keep down trouble. Graham denied that there was any conversation or any transaction relating to narcotics on this visit. Graham likewise denies that Green delivered any narcotics to his home the following day, as Green had testified, and Grace Cunningham Graham supports her husband in this testimony. Minnick denied

knowledge of any narcotics having been obtained on the trip, although he admits participating the day after his return in a sale of some unknown substance to an individual who turned out to be a federal narcotics agent for $250.00. The substance was later verified by chemical analysis to be Mexican heroin. Minnick's only explanation was that he didn't know what the substance was and that he had been "framed."

This was the substance of the defendants' testimony with reference to the first occasion upon which it is alleged that the Cadillac automobile was used in violation of 49 U.S.C.A. § 781.

The testimony with reference to the second occasion upon which it is alleged that the automobile was used to transport contraband narcotics related to the occasion of a third trip to Mexico for the purpose of smuggling narcotics, as testified to by Green. Green testified that on this occasion, around September 20–25, 1961, Graham gave him the white Cadillac automobile to make the trip in and furnished the money to buy the narcotics, and that he, Green, made a nonstop round trip to Mexico and back, some 3200 miles, in a couple of days' constant driving. Green testified that the narcotics obtained on this trip was also turned over to Graham. Both Graham and his wife denied that any such trip occurred, denied that the automobile was ever loaned to or used by Green during this period. Other witnesses testified to the presence of the automobile at Graham's residence in Dayton, Tennessee during all of the period of time it was alleged to have been driven by Green to Mexico. This is the substance of the testimony with reference to the second occasion when it is alleged that the Cadillac automobile was used to transport contraband narcotics in violation of 49 U.S.C.A. § 781. In the criminal trial, the jury acquitted Graham upon the counts of the indictment based upon this alleged trip.

██ On the basis of the record in this case it appears clear that the Government has established probable cause for seizing the automobile and initiating

the forfeiture action. Under 19 U.S.C. A. § 1615, the burden of proof therefore rests upon the claimants, if they are to avoid a forfeiture. It is the opinion of the Court that the claimants have not carried the burden of establishing that the automobile was not used upon either occasion for transporting or facilitating in the transportation of contraband narcotics. On the contrary the Court is of the opinion that the weight of the credible evidence establishes both that the drug involved was contraband and that the automobile was used to transport it or facilitate in its transportation. Clearly the evidence so establishes with reference to the first occasion of the use of the automobile by Graham in the early morning of September 4, as alleged in the fifth paragraph of the libel. The fact that Graham took only a sample of the drug with him as he drove away on that occasion would not constitute any basis for remission of the forfeiture. Likewise, the fact that Mrs. Graham may not have known of the use of the automobile by her husband upon this occasion would not entitle her to a remission. Neither the smallness of the quantity of narcotics involved nor the lack of knowledge of the owner of the use of the automobile would constitute any legal basis for remission of the forfeiture. United States v. One Oldsmobile Automobile, 5 Cir., 256 F.2d 931.

Even though the jury may have acquitted Graham in the criminal action upon the counts of the indictment relating to the alleged use of the Cadillac for a return trip to Mexico by Green during the period of September 20–25, this would not be conclusive in the claimants' favor upon this issue in the libel action. The burden of proof in the criminal action is upon the Government to prove the guilt of the defendant beyond a reasonable doubt, whereas the situation is reversed in the libel action and the burden is upon the claimant to establish by a preponderance of the evidence that the automobile was not so used. All that can be said with assurance of the jury verdict in the criminal action was that

the jury did not believe the proof established beyond a reasonable doubt that the automobile was so used. However, the testimony of Green upon this trip was not corroborated by hotel records, telephone calls, or otherwise as was the case with reference to the other two trips, and the Court is of the opinion that the claimants have therefore carried the burden of proof of establishing that the automobile was not used in violation of 49 U.S.C.A. § 781 with reference to the September 20–25 occasion as alleged in the sixth paragraph of the libel. Having found for the Government upon the illegal use of the automobile upon the September 4 occasion, as alleged in the fifth paragraph of the libel, a finding for the claimants upon the second offense would not affect the judgment of forfeiture found upon the first offense.

Rogers and Company, Inc., the lienholder, seeks to be heard upon two basic issues. In the first place, it seeks to be heard, along with the owner, upon the issue of whether the vehicle did or did not offend. Next it seeks to be heard upon the issue of whether, by reason of its own innocence, it is entitled to a judicial determination of a remission or mitigation.

The attention of the Court will therefore next be directed to the motion of the Government to strike the intervening petition of Rogers and Company, Inc. This motion is based upon two grounds. It is first contended that the intervening petition should be stricken upon the ground that the Court is without jurisdiction to permit intervention by a lienholder in a narcotics forfeiture. It is next contended that the Court is without jurisdiction to grant a remission or mitigation to a lienholder in a narcotics forfeiture.

Although it appears that the question of the right to intervene has not heretofore been specifically raised, numerous cases have considered the rights of intervening lienholders in narcotics forfeitures. U. S. v. One 1949 Lincoln Coupe, (D.C., Mich., 1950) 93 F.Supp. 666; U. S. v. One 1957 Oldsmobile, (C.A., Texas,

1958) 256 F.2d 931; U. S. v. One 1954 Oldsmobile Convertible, (D.C., Ky., 1957) 152 F.Supp. 616; U. S. v. One Cadillac Convertible Coupe, (D.C., N.J., 1953) 115 F.Supp. 723.

No attempt is made in 49 U.S. C.A. § 781 et seq., to define who may intervene in a judicial proceeding for the purpose of determining whether the vehicle did or did not offend.[1] However, reference is made in 19 U.S.C.A. § 1615 to the effect that "where the property is claimed by *any* person" (Italics supplied) the burden of proof will rest on the claimant. Likewise in 19 U.S.C.A. § 1618 the right to apply to the Secretary of the Treasury (Attorney General) for a remission or mitigation is extended to *"any person interested* in any * * * vehicle" (Italics supplied). It is apparent, therefore, that the right to intervene in a judicial proceeding for the determination of the issues relating to forfeitures for narcotics violations extends to any person or party having a legally recognized interest in the vehicle, whether he is owner or lienholder, and whether that interest is legal or equitable in nature.

Having established the right of the lienholder to intervene and to be heard upon the issue of whether the vehicle offended so as to be subject to forfeiture, the lienholder however stands in no different position upon this issue than does the owner (with the exception of the proviso relating to the owner and as contained in Sec. 782 of Title 49). The same rule with reference to burden of proof and the right to forfeiture would apply to the lienholder as applies to the owner. A libel for the forfeiture of a vehicle is an *in rem* action and the initial issue is as to whether the *vehicle* has offended the laws so as to be subject to forfeiture, and not as to the innocence or good faith of the lienholder or owner. The Court having heretofore found that the subject vehicle has offended the laws relating to the transportation of contraband narcotics, this finding would be equally binding upon the lienholder as upon the owner.

The lienholder next contends that to deprive it of its property or interest in the vehicle, when the lienholder was innocent of any wrongdoing and acted in good faith with proper diligence in acquiring its lien, would be a denial of due process of law or the taking of private property for public use without fair compensation. The laws relating to forfeitures do cause one who is raised in the traditions of the Anglo-American principles of justice and who is committed to the constitutional principles of due process and just compensation to search closely for a constitutional violation. The idea that an inanimate object, such as an automobile, can commit an offense or do a wrong is of course a legal fiction. Only people commit wrongs and violate laws. The only justification for forfeitures is that forfeitures, like fines and penalties, are imposed to punish people or deter people from committing

---

1. The laws relating to forfeitures generally are scattered throughout the code with inadequate cross references. Some provisions, including forfeitures for narcotics violations now under consideration, are carried under the title "Transportation" (49 U.S.C.A. §§ 781–788). By general reference in Sec. 784 to "the customs laws," the administrative and enforcement provisions relating to forfeitures as contained in the title "Customs Duties" are made applicable (19 U.S.C.A. § 1615— "Burden of proof in forfeiture proceedings" and § 1618—"Remission or mitigation of penalties"). The last cited section is modified by Executive Order 6168 issued under the title "Executive Departments" (5 U.S.C.A. §§ 124–132n) wherein the duties of the Secretary of the Treasury regarding remission and mitigation are transferred to the Attorney General. The provisions relating to forfeitures for alcohol tax violations are generally covered in Title 26 "Internal Revenue Code" (for a partial list see 4 West's Federal Forms 585), though related provisions are likewise scattered throughout other titles. See 40 U.S.C.A. § 304i. A partial list of other provisions relating to forfeitures and contained under various titles is listed in the "Notes of the Advisory Committee to Rule 54," Federal Rules of Criminal Procedure.

wrongs and violating laws. Until or unless some judicial or administrative remedy is provided to relieve innocent parties who have acted in good faith and with due diligence from the harsh consequences of a forfeiture, it would appear that some constitutional violation may exist. It does appear however to be well settled that forfeitures of property used in violation of law is generally not a denial of due process of law or a violation of the constitutional prohibition against the taking of private property for public use without fair compensation. Van Oster v. State of Kansas, 272 U.S. 465, 47 S.Ct. 133, 47 A.L.R. 1044; Goldsmith, Jr.—Grant Company v. U. S., 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376; Dobbins Distillery v. U. S., 96 U.S. 395, 24 L.Ed. 637; Associates Investment Company v. U. S., 5 Cir., 220 F.2d 885; U. S. v. One 1957 Oldsmobile Auto, (C.A., Texas, 1958) 256 F.2d 931. Referring to forfeiture laws, the Court in the Van Oster case, supra, stated:

> "They suggest that certain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril. The law thus builds a secondary defense against a forbidden use and precludes evasions by dispensing with the necessity of judicial inquiry as to collusion between the wrongdoer and the alleged innocent owner. So here the legislature, to effect a purpose clearly within its power, has adopted a device consonant with recognized principles and therefore within the limits of due process."

Upon the constitutional issue, it is appropriate to point out that the laws relating to forfeitures for narcotics violations do provide an administrative remedy for relief to innocent parties, as will be more fully discussed hereinafter.

Finally, the attention of the Court will be directed to the contention of the lienholder that it is entitled to a judicial determination of its right to remission or mitigation, as an innocent party, and the motion of the Government to strike the petition upon the ground that the Court is without jurisdiction to grant a remission or mitigation to a lienholder in a narcotics forfeiture, even though the lienholder is innocent and acted with due diligence and in good faith in acquiring its lien.

It is the contention of the lienholder that Sec. 786 of Title 49, by providing that "the provisions of this chapter shall be construed to be supplemental to, and not to impair in any way, existing provisions of law * * * authorizing the remission or mitigation of fines, penalties, or forfeitures" thereby adopts and makes available to the lienholder the provisions for a judicial grant of remission or mitigation of a forfeiture as contained in the Internal Revenue Code, relating to forfeitures under the alcohol tax laws, including 26 U.S.C.A. § 7301 relating to the bootlegging hazards investigation. However, Sec. 781 et seq., of Title 49, and the forfeitures therein provided, refer to violations of the customs laws, and not the internal revenue laws, and the provisions for remission and mitigation (other than contained in Sec. 782) are exclusively those provided under the customs laws, not those provided in the internal revenue laws. Sec. 784 specifically refers to "all provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels and vehicles for violation of the *customs laws*." (Emphasis added.)

The only provision for judicially administered remissions or mitigations of forfeitures in narcotics violations cases are the two provisions contained in Sec. 782, the one relating to common carriers, and the other relating to "owners" where the vehicle was illegally in the possession of another when the offense was committed. Neither of these provisions is relevant here. Other than these, the sole statutory method for granting remission or mitigation in a narcotics forfeiture is contained in 19 U.S.C.A. § 1618, which provides in part as follows:

> "* * * Whenever any person interested in any * * * vehicle files with the Secretary of the

Treasury * * * a petition for the remission or mitigation of such * * * forfeiture, the Secretary of the Treasury, if he finds that such * * * forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such * * * forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, * * *."

The powers granted by the above section to the Secretary of the Treasury have since been transferred to the Attorney General by Executive Order No. 6166 (5 U.S.C.A. Secs. 124–132 and note).

The remedy provided in the above section is exclusive, and it is now well settled that the District Court is without jurisdiction to remit forfeitures for violations of the customs laws, regardless of the innocence of the owner or lienholder. U. S. v. One 1941 Plymouth Sedan, (C.C.A., Okla., 1946) 153 F.2d 19; U. S. v. One 1951 Cadillac Coupe, (D.C., Pa., 1952) 108 F.Supp. 286; U. S. v. One 1955 Ford Sedan, (D.C., Md., 1958) 164 F.Supp. 729; U. S. v. One 1952 Buick Auto, (D.C., Minn., 1955) 136 F.Supp. 253. In fact, it has been held that the District Court does not have jurisdiction under the Administrative Procedure Act (5 U.S.C.A. § 1009) to review the decision of the Attorney General on a petition for remission or mitigation of a narcotics forfeiture, it being a matter "by law committed to agency discretion." U. S. v. One 1957 Buick Roadmaster, (D.C., Mich., 1958) 167 F.Supp. 597. Whether a judicial review of an abuse of agency discretion would be available is not in issue in this case, as the lienholder has not yet exhausted its right to agency review.

The motion of the Government to strike the petition of the intervenor to the extent that it seeks a remission or mitigation of the forfeiture must therefore be sustained, and the intervenor must seek its relief through application to the Attorney General.

An Order will enter accordingly.