**UNITED STATES of America,**
**Plaintiff,**
v.
**VESSEL FL 4127 SE, her engines, tackle,**
**equipment, etc., in rem, Defendant.**
**No. 69–540–Civ.**

United States District Court,
S. D. Florida,
Miami Division.
April 22, 1970.

Alfred H. O. Boudreau, Jr., Admiralty & Shipping Section, Dept. of Justice, and Robert W. Rust, U. S. Atty., and Robert L. Steuer, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Robert J. Paterno, of Taylor, Brion, Buker, Hames, Greene & Whitworth, Miami, Fla., for intervenor North Hialeah Bank.

Saul J. Cooper, Miami, Fla., for intervenor Manuel Delgado.

## MEMORANDUM OPINION

ATKINS, District Judge.

The word "forfeiture" has a harsh ring and in this case application of certain forfeiture laws of the United States produces a harsh result. I am bound by these laws, however, and if they are to be tempered it must be done by the Congress.

On August 8, 1968, Manuel Delgado, a citizen of the United States, purchased a 23½ foot speedboat. On August 15, 1968, this boat was intercepted by the United States Coast Guard in international waters between the United States and Cuba. The sole occupants of the boat were two Cuban nationals. One of these men testified that the boat was given to him by an Enrique Costa. Delgado had purchased the boat allegedly to enter into a commercial fishing venture with Costa. Immediately after the purchase he transferred the boat to Costa. Despite Delgado's testimony that Costa was born in Tampa, it is clear that he is a Cuban national and therefore not a United States citizen.

Title 46 U.S.C. § 835 provides as follows:

"When the United States is at war or during any national emergency, the existence of which is declared by proclamation of the President, it shall be unlawful, without first obtaining the approval of the Secretary of Commerce:

(a) To transfer to or place under any foreign registry or flag any vessel owned in whole or in part by any person a citizen of the United States or by a corporation organized under the laws of the United States, or of any State, Territory, District, or possession thereof; or

(b) To sell, mortgage, lease, charter, deliver, or in any manner transfer, or agree to sell, mortgage, lease, charter, deliver, or in any manner transfer, to any person not a citizen of the United States (1) any such vessel or any interest therein, or (2) any vessel documented under the laws of the United States, or any interest therein, * *."

The word vessel is defined in 46 U.S.C. § 801:

"The term 'vessel' includes all water craft and other artificial contrivances of whatever description and at whatever stage of construction, whether on the stocks or launched, which are used or are capable of being or are intended to be used as a means of transportation on water."

A state of national emergency, proclaimed by President Truman on December 15, 1950, now exists. See Proclamation No. 2914 of that date printed at 15 F.R. 9020 and 64 Stat. A454. And see the note preceding 50 U.S.C.A. App. at page 9 of the 1968 edition. It is undisputed that Manuel Delgado failed to obtain the approval of the Secretary of Commerce for delivery of the boat to any persons not citizens of the United States.

Under the above principles of law I am compelled to condemn the subject vessel as forfeited to the United States.

The essential elements leading to forfeiture are present. The boat was transferred to someone not a United States citizen without the prior approval of the Secretary of Commerce at a time when a national emergency existed. There was some testimony that Delgado believed Costa was an American citizen. Even if this fact were unequivocally established it would not lessen the penalty. It is the illegal act which works the forfeiture and when an act, proscribed by a statute containing a provision for forfeiture, is committed, the innocence of the owner or lienholder will not prevent forfeiture. United States v. One 1957 Oldsmobile, 256 F.2d 931 (5th Cir. 1958); Associates Investment Company v. United States, 220 F.2d 885 (5th Cir. 1955).

■ There remains to be dealt with the unfortunate position of the intervenor, North Hialeah Bank. The Bank held a valid security interest and lien on the forfeited vessel. It is clear that the Bank is a totally innocent party in this case. It simply financed a boat for a customer—a routine and ordinary banking transaction. The Bank relies on 46 U.S.C. § 961(b) to preserve its interest in the boat. This section provides:

"The interest of the mortgagee in a vessel of the United States covered by a mortgage, shall not be terminated by the forfeiture of the vessel for a violation of any law of the United States, unless the mortgagee authorized, consented, or conspired to effect the illegal act, failure, or omission which constituted such violation."

The government argues that this statute is not applicable to the boat involved here as it is not a "vessel of the United States" as defined by 46 U.S.C. § 911(4):

"The term 'vessel of the United States' means any vessel documented under the laws of the United States and such vessel shall be held to continue to be so documented until its documents are surrendered with the ap-

proval of the Secretary of Commerce; * * *."

It is uncontested that this boat could not have been documented under United States law as it weighs less than five tons.

The Bank cites The Mariam, 66 F.2d 899 (9th Cir. 1933) as supporting its position. The Mariam was a ship of less than 200 tons and thus could not be the subject of a preferred ship mortgage under 46 U.S.C. § 922(a). She did carry a mortgage though which was recorded in the office of the Collector of Customs of the Port of San Diego. The court upheld the rights of the holder of this mortgage in the foreiture action brought by the government.[1] Although not specifically stated in the opinion it is obvious that the Mariam was a vessel of the United States and covered by 46 U. S.C. § 961(b). As the government points out the collector of customs will record no mortgage unless the vessel which is mortgaged was documented as a vessel of the United States at the time the mortgage was made. See 19 C.F.R. 3.33(b).

The result reached will undoubtedly lead the Bank to ask how it may protect itself against forfeitures of this sort when financing small boats. Regrettably there is no answer as reflected by the plight of those innocent banks and financing companies who hold liens on automobiles which are forfeited to the government for involvement in illegal gambling or narcotic activities.

It is therefore ordered and adjudged that the defendant vessel FL 4127 SE, her engines, tackle, equipment, etc., is condemned as forfeited to the United States.

The Government shall submit an appropriate Decree of Forfeiture within five days from this memorandum opinion.

---

1. This holding was conditioned on a factual issue to be determined on remand. This issue is not relevant to the problem before this Court.